Somebody can begin. Your Honor, my name, Your Honors, my name is Abraham Scoff. I represent Micro-Bio-Medics doing business in Caligore. I will be making arguments on behalf of Caligore as well as Ms. DiBattisto. In addition, Alyssa Kadish is here representing Ms. DiBattisto and she will be making some arguments that relate directly to Ms. DiBattisto. And if it pleases the Court, I'd like to reserve four minutes of our time for rebuttal. Judy DiBattisto was hired by PSS in Georgia in 1996. At that time, she was hired in Atlanta, Georgia and signed a non-competition agreement with PSS in Atlanta, Georgia. And at that time, she went to work for PSS in Atlanta, Georgia after signing the non-compete agreement. If that non-compete agreement was not valid and binding back in November 1996, it's not valid and binding now. It was clear, none of us knew back at that time where Judy DiBattisto might end up, but it was clear that she was going to work. Didn't the agreements indicate it would cover her wherever she worked? Your Honor, I believe the agreement was ambiguous. It said specifically What was the exact language? Well, the exact language, I'm sorry, I couldn't hear you. Of the original agreement, the one she signed. The agreement that she signed said, except for employees employed in the states of Georgia and Louisiana, the following is the territory, the area of restriction. For employees employed in Georgia and Louisiana, the territorial restriction is all counties. And we submit that that creates Wait just one second. It also says, if you read on in that paragraph before, after it talks about except for employees in Georgia, it encompasses anywhere where they've been assigned, and it talks about service within the 12-month period immediately preceding the termination of the employment. So it seems to me in determining where she's employed under this agreement for purposes of invoking it, you have to look at the 12-month period immediately preceding her termination of the employment. Your Honor, I believe the 12-month language in both B and C of that paragraph 15 come after the initial phrase which says within the geographic area described below. So then when you go to the geographic area described below, it says in the states of Georgia and Louisiana, the geographic area means the following counties and then in handwriting, all counties hereby included. So when you look to the 12-month period language in both of those clauses, in both of those paragraphs, that language is subordinate to the prior phrase which is within the geographic area described below. And I think Your Honor's question highlights the fact that this clause is difficult to understand because I'm here talking about subordinate phrases, subordinate to one language, to one word or another. That's all I'm saying. Well, that's what contracts do. They have multiple phrases in them. If you're wrong In other words, your argument hinges on the fact that we view her agreement as being covered solely by employment within the State of Georgia, does it not? Our argument is contingent on the court ruling that this contract, if it's binding at all, is only binding within the State of Georgia. And the reason we argue that is, number one, we believe the contract is ambiguous both for the reason that I just argued as well as the fact that the word employed, which is the subject of what's in the briefs, the word employed can either be a verb or a noun. Dictionary definition could be either. It could either mean hired or it could mean the state of being employed. And there's no way of telling from looking at the language in which sense it is meant. So you have really two ambiguities here. So when you have two ambiguities on the one hand, if you look at your restatement analysis of choice of law, you have two ambiguities here. This document was drafted by PSS. The testimony was that it was not subject to negotiation. In fact, Mrs. DiBattista testified that when she got the contract, she didn't even look at it. It was one of the documents she had to sign to become employed, and she signed it. Hard to understand, hard to parse. There is an ambiguity here based solely on the dictionary definition. It should be construed against the drafter, which is PSS. But there's another factor as well. If this is interpreted to mean it's going to be binding on Mrs. DiBattista wherever she may be transferred in the future, then when she signed it in November 1996, it would have been void on its face. In 1981, the Supreme Court of Georgia in the Cogar case, which we cite in the brief, said that noncompete agreements, which are indefinite and unrestricted in their geographical scope and which might apply to an employee anywhere that employee might be assigned, are void. Void. Not unenforceable. Void. And five years later, in the case of Jarrett v. Hamilton, the Georgia court of appeal also said that when you have that type of deficiency, when the employee can – when the noncompete purports to imply that the employee, wherever the employee may be assigned, the contract is void from the beginning. The actual word of the Jarrett case is it invalidates the provision and the entire agreement. And you have to assume that PSS, which drafted the contract and put Mrs. DiBattista to work in Georgia, wanted the agreement to be binding. Let's cut to the chase. What are you asking us to do? Your Honor, we're asking you to set aside the permanent injunction, which is based on a finding that the noncompete agreement applied in Nevada, because the noncompete agreement, if it was valid at all, was only valid in Georgia. So that to the extent that the district court opinion, the district court order, was premised on a finding that the noncompete agreement was binding in Nevada, it was wrongly decided as a matter of law and must be set aside. You've used a bunch of minutes. I'm not trying to cut into you, but you said your co-counsel wants to talk also and you want to save time for rebuttal? Okay. I'll save the rest. Your Honor, I have a few more points, but I'll save that for rebuttal. Make them if you'd like. No, I will. Thank you, Your Honor. Let me just clarify one thing. I think I heard him say permanent injunction. Is this a preliminary injunction? I think you misspoke. Preliminary. It is a preliminary injunction. I just wanted to make sure that something hadn't happened that we didn't know about. All right. Thank you. No, Your Honor. It is a preliminary injunction. So in light of that, too, I mean, the standard, of course, we use on a preliminary injunction is abuse of discretion. And what the district court found is that your client was not likely to succeed. In other words, PSS was likely to succeed in its claims. Why is that an abuse of discretion? Well, Your Honor, as Mr. Scoff just explained, the argument with respect to the finding of a likelihood of success with respect to the claim for breach of contract. And if we disagree with that, then basically is there anything left? Well, if you disagree with that, then, yes, there is something left. All right. First of all, as you're well aware, first of all, I apologize. I didn't introduce myself. My name is Elissa Kadish. I represent Appellant Judy DiBattisto. There's a required finding, of course, of irreparable injury in order to enter a preliminary injunction in this case. If you read the preliminary injunction that was entered by the district judge in this case, the only finding of irreparable injury in there is a recitation of the provision of the employment agreement that stipulates, if you will, that a violation of the agreement would constitute irreparable injury. And then the judge goes on to say, you know, we presume irreparable injury exists. There is no independent finding by the court in the order granting the preliminary injunction, in the preliminary injunction itself, finding based on the evidence presented that irreparable injury was present. Clearly, that's a requirement. Let me try something out on you and tell me what you think. I think in general that your legal proposition is correct, that there needs to be a finding, and that there seemed to be such a finding in his oral order, but for whatever reason it didn't get basically transported or ported over to the written order. But that happened, so we're stuck with the written order. However, it seemed to me that if this case is governed by Florida law, which it would appear to be under the Nevada conflicts of law principles, that Florida law has a presumption in it of irreparable harm in cases like this, not unlike we find in the federal law, in the trademark statutes, or in the copyright cases. So why wouldn't that serve as the legal foundation for irreparable harm in this case? Well, I suppose, and I apologize, Your Honor, because Florida law was really not particularly examined or addressed in the court below for whatever reason, but it seems to me that the standard and the required finding of irreparable injury is a procedural matter rather than a substantive matter and should be analyzed under the applicable federal law requiring a specific finding in the federal court of irreparable injury. Furthermore, to the extent that that relies on an analysis and a finding that there was some trade secret violation, and I'm not sure if that's where that presumption would arise under Florida law, but it's certainly our position that there is no appropriate finding of a trade secret violation here. We've got a customer list that admittedly was prepared by Ms. DiBattisto. She has testified without contradiction that she handwrote from memory a list of names and addresses, and that that was input by Caligore into the system over there. Even Judge Jones, the district judge below, found that the names and addresses are not necessarily trade secrets on their own. He made a finding that we feel the Florida law says something along the lines of trade secrets, customer lists, and it may have some other thing in there. It's not restricted solely to trade secrets as we would think of them under one of the Uniform State Trade Secret Act. To create that presumption that you're talking about. And I think that is referenced in the red brief, footnote in the red brief. I apologize, Your Honor. It's certainly our position that the customer list in this case that was created, that was simply the names and addresses of customers created from the memory of Judy DiBattisto, not constitute a trade secret, and in addition, the other two matters that the Court referenced in its findings regarding trade secrets were the purchasing histories for two customers and a backorder report. But again, while it's uncontradicted that she downloaded those documents, it's also uncontradicted that she destroyed them, and there's no evidence that those documents were actually used in some way on behalf of Caligore or Judy DiBattisto in any improper way that's required for a finding of a violation under the Trade Secret Act. The other issue, aside from irreparable injury, is also. Irreparable injury, let me go back to that for a second. Is there some rule case or something that I'm having trouble putting my fingers on that says that you can't use the oral findings to supplement the written findings? I mean, because he parses through this irreparable injury thing pretty carefully, and he says it's in the contract, but there are also other aspects that convince me that there's a condition showing irreparable injury. I mean, he says that in terms of findings. And so are we supposed to ignore that completely in an abuse of discretion context? Is there a rule that says you can't look at what he said? I'm unaware of a rule. If he identifies his findings and conclusions? I'm unaware of a rule that specifically says that, Your Honor. Me, too. So why can't we? Because the fact that Judge Jones made his comments in the context of that hearing, but then he clearly, what he did, and there was another whole separate hearing regarding his findings, and that's what was ultimately entered by the Court as his findings that are the basis for his ruling. He calls these findings and conclusions in here. We must ignore this? Why? I think we do have some Ninth Circuit cases that suggest that if you have a written order, you don't include the oral comments. Do we not? Thank you, Your Honor. And I apologize. I do not have those citations at my fingertips. It's probably dicta. It's all in the eyes of the behold. I apologize, and I thank Your Honor for raising those issues. Yes, in fact, you know, when there is, in fact, a written order that is entered by the Court that is the ruling and that is his final findings rather than comments that are made verbally at the hearing that occurred. And I apologize that I didn't have those cases off the top here. With respect to the balance of hardships also, the Court also has no findings either verbally in the hearing or within his preliminary injunction that indicate that he evaluated and balanced the hardships. Now, we know that under Ninth Circuit law there is this sort of sliding standard of review, but, in fact, in the Los Angeles Memorial Coliseum versus the NFL case, in this Court in 1980, the Court made very clear that the balance of hardships has to be addressed regardless of which of those standards is being used, and at least there must be a finding that the balance of hardships do tip in favor of the party seeking the injunction. Now, you know, we certainly have our arguments to present regarding why the balance of hardships favors Ms. DiBattista, although, frankly, that's argument that should have been considered and evaluated by the Court below and should have led to a finding in order to support the entry of a preliminary injunction. I'm sorry to interrupt you, but you said you wanted to save some time. I understand that, and I appreciate that. I just want to briefly go over the scope of the injunction then. The injunction that was actually entered by the Court below was relying on Nevada law. Under Nevada law, it must be reasonable in its scope and duration, and certainly that's the law in many other states as well, and it's got to be only to the extent that it's reasonably necessary to protect the business and goodwill of the employer here. To the extent that this agreement prohibits Ms. DiBattista from selling products offered by Caligore that PSS doesn't even sell, doesn't even have in its inventory, it's clearly overbroad. That would not be an area in which she would be competing in any way with PSS, and there's no legitimate interest in prohibiting that. Additionally, the evidence that was presented was that Ms. DiBattista had contact with these 114 customers on behalf of PSS. To the extent that it prohibits her from contacting other potential customers, it is also beyond the scope of what's permissible, beyond what's necessary to protect the legitimate interest of PSS, because it goes beyond the customers that she was contacting for them and developed a relationship with through the benefit of PSS. PSS has no legitimate interest in prohibiting that. And with that, I'd like to reserve the rest of our time. Thank you, Your Honor. Thank you, counsel.  Good morning. My name is Don Gilbert. I'm with the law firm of Fenimore Craig in Phoenix, Arizona, and we represent PSS World Medical. There are a few issues that I would like to take up with you, and some of them you've already raised with counsel. The first one is standard of review, because I think in this case it is critically important, obviously,  Clearly, the standard is abuse of discretion. With respect to findings, it is a question of clearly erroneous findings. Otherwise, they're accepted. And I believe, although this wasn't raised quite the way that the Court raised it, that if there is a missing finding but there is a record that supports the finding, that findings necessary to support the judgment are accepted, if the record will support it. In other words, if there is a missing element but it's in the record below. What are you talking about? You're being abstract. I'm sorry. My understanding is that there was an argument that, well, the Court orally obviously made it clear that he had found instances of irreparable harm, that there was an absence of a finding in the formal order. And I believe if the findings were necessary on a question of fact, if it's in the record, the reviewing court accepts the – how should I put this? The reviewing court assumes that the Court found the evidence in such a manner as to support the judgment. If the findings are necessary, then the Court will support the judgment. And the question is, what case or rule says that? Your Honor, I acknowledge that that is not an issue that's been briefed with you. That is my general understanding of the rule, and I cannot cite you a case as I stand here before you. I apologize for that. But that wasn't the way that it was. It's your general understanding. And I think it's correct. So if I'm correct, there's only three months to run on this injunction, or something like that? Yes, Your Honor. It hasn't gone to trial yet? It's set to go to trial in January. And there is – you may recall, if you noticed the agreement, that it provides for periods in breach to extend on to the end of the injunction. In this case, there is at issue another six months. So, for example, the Court didn't formally enter until February and ran it for 18 months from the original date of termination. There's actually another six months at issue. So you're relying on something that's in the record without a finding concerning a reparable injury, but – and you're not relying on the presumption that the Florida law would allow you? I'm relying on both. And, yes, Judge McGowan is correct. The Florida statute – McEwen. McEwen. I apologize. I'm showing my ignorance. Thank you. The Florida statute does, in fact, provide for a presumption of injury. It is Florida Statutes 542.335, subparts. Customer lists. This says – this states that there is a – the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant. Is that controlling here? Yes, it is, actually. But they – even if Florida law applies, I think counsel says that the standards for preliminary injunction would be a procedural matter and that you wouldn't then invoke Florida law. What's your response to that? I'm going to give you a slightly longer answer than perhaps you're expecting. I believe you have to start the whole analysis of this case with the choice of law provision in the contract. You cannot interpret a contract without first deciding what law applies to it. And in this situation, the forum court looks to the agreement to see what law the parties have specified. Here they specified Florida law. The next step is, does that choice of the parties bear some relationship to the transaction? In this case, it clearly does. But the court never found – never determined the choice of law question, did it? Not explicitly. The court did not. But the court went through the process. The court recognized Florida law and recognized that Nevada had an interest in the application of law in that forum. It seems that the only thing the court kind of might have specifically decided was the court never said Georgia law applied. Is that correct? I think the court clearly decided Georgia law did not apply. And if you go through that process, you never get to the question of Georgia law. Here's a contract between the parties that says Florida law governs. You're in Nevada. You apply your choice of law rules. You first look to see what law the parties selected. They selected Florida. You see, does Florida have a reasonable relationship to the transaction? Yes, it does. That is where Judy DiBattista was interviewed. That's where she lived when she was hired. Yes, it does. That is the corporate headquarters and center of employment for all of the employees of PSS World Medical. So you clearly have a substantial relationship, and you have one of the parties to the contract with a clear interest in having the law of a single forum decide all of its employment contracts. So a Nevada court sitting on a question of whether to enforce this first decides that Florida law is the law specified by the party, and second, that that is an appropriate choice because Florida law bears a connection to the transaction. Then the question is, does the application of Florida law offend Nevada law? And in this case, no one is arguing that this contract isn't enforceable under either Florida or Nevada law. The only argument is it's unenforceable under Georgia law, and that is never a question that you reach. Choice of law doesn't take you there. So that, I think, answers your question, but as I say, it was a little bit longer answer than perhaps you were expecting. The ---- I've learned never to predict. Thank you, Your Honor, and I appreciate that. This is a case where I think the facts do bear on how this ought to come out. Strangely enough, in an injunction case, I think the facts are paramount. But in this case, the Court is clearly finding that my client suffered from a disloyal employee who was surreptitiously employed and committed to work with a competitor and engaged in disloyal activities that put the competitor in a position of entry into this particular market and put them in a position where they were able to take, depending on how far down the time continuum you are, from an initial 85 percent to over 92 percent of the business that had been serviced by this particular representative of my client, Judy DiBattisto. So there's an enormous loss here and a clear need to stop the interference with those customer relationships and that goodwill and to start the process of capturing the rights that my client had under the contract itself. I think the other argument that Caligore has made about Georgia law is simply one that when you read the contract, you should reach the conclusion that the contract was only intended to apply in Georgia. You cannot, I don't believe, fairly read that contract and reach that conclusion. It clearly contemplates that this is a person who has been hired with the possibility of working in a number of locations. It refers specifically to territories in the plural. It refers to, I'm sorry, the other specific word that's in the plural escapes me at the moment. But it clearly contemplates that she may be assigned different duties, may be given different titles, may be placed in different locations. And the contract is against the factual backdrop that Judy DiBattisto concedes. When she was sent for training in Georgia, she did not know where she was going to work. And there would be absolutely no reason to suspect that with no intention of placing her in Georgia, the parties would have contracted for only her contract that only covered Georgia. And further, since this is the contract they were using as their form with all of their intended to cover only employees working in Georgia. There are a couple of other issues that were raised that I'd like to get to, if I might. There were allegations that we were delayed in bringing the request for injunctive relief. And that was not something that was argued to you on the primary argument of the appellants. But I think on the record before you, first, the cases don't support what they're saying. Second, you need to bear in mind that the plaintiffs in this case are Caligore and Judy DiBattisto, not my client. They sued my client asking for an injunction, and then they didn't pursue it. And then my client notified them, and it's in the record that they were notified in November, that we were definitely seeking an injunction and asked for an accelerated process. So I find the allegation somewhat unfair about delay, but the cases that they cite don't support it in any event. There is no case that comes close to the time periods and the facts of this case that they've cited. Specifically, the Gilder case, which is the old PGA case when the golf clubs had grooves and there was a question whether those were the right grooves, that case was a case that involved more than seven months between analyzing the claim and talking about it and then finally bringing suit. Seven months was not an excessive delay. The ACLU case, which was cited for the proposition that three months' delay is excessive, actually, when you read the case, it said the plaintiff delayed for two years in bringing the suit and then an additional three months in asking for an injunction. So that case is not apposite either. The question of hardship. The Sun Microsystems case clearly says that we have to show the likelihood of success on the merits, which the court clearly found, and the possibility of irreparable injury, which the court both presumed and I believe on the record found. The Florida statute has been called to your attention, but if you want to talk about balancing the hardship, the record is replete with the judge considering the impact of the injunction on Judy DiBattista and Caligore. And one point that somehow the plaintiffs failed to get into their brief is that Judy DiBattista was paid to leave my client and go to work for Caligore. She was paid $125,000 as a bonus for leaving. She was guaranteed $39,000 of salary. She was given the opportunity to earn commissions against that to better it. And, indeed, if her end she was offered a $50,000 bonus, if she achieved a level of success in bringing over my client's business, that was $600,000 of profit, which is something that would be less than all of the business that she had been doing while she was with my client. So she stood to make over $200,000. She is still employed by Caligore. Her husband is employed by Caligore. She doesn't have to give the money back just because she's been enjoying. So in terms of hardships, I'm sorry, but I can't see it. And that's particularly true when these are hardships that are brought upon her by her own violation of her contractual obligations and her promises and her duty of breaches of her duty of loyalty. The things that she did to my client, she can hardly now complain that having been called to account because of those in some manner prejudices her and should be weighed in the balance. Anything else? Not unless there are questions. Thank you, counsel. Thank you. You can respond. I just wanted to address the Florida law, the application of Florida law and the conflict analysis. The forum court in Nevada should have looked to Nevada law to determine its conflict analysis. When you look at Nevada law, Nevada relies heavily on the restatement, Sections 187 and 188. The rule in Nevada, which we've cited in our brief, is that if the parties designate the law in an agreement, you follow that law unless the law is designated there to evade the law of the real situs of the contract. And Nevada relies unless the law is what? Evaded? Who? Evade the law of the real situs of the contract. And the Nevada case is repeatedly, quote, directly from the restatement. And when you look at the restatement, the restatement says, what does this mean? In the restatement 187, Section 2, the restatement says what that means is you do the analysis that you would do under a normal conflict analysis under 188 of the restatement, which Nevada cites word for word in this Sunracas case, and then you see whether some other state has a materially greater interest. But that doesn't apply where the contract specifically says what laws to apply. Under 187 of the restatement, the analysis is supposed to be, was this designated to evade the law of the real situs? The real situs was Florida here. The real situs was Georgia. Now, wasn't the contract interviewed in Florida? She spoke to PSS in Florida. PSS said to her, and it's in the record, PSS said to her, if you want a job with us, get up to Atlanta within 48 hours, there will be a job for you there. She goes up to Atlanta. She interviews. That's where she signs the contract. Now, Georgia is a lex loci state. The restatement under 188 and this Satiricus case in Nevada lists the place of contracting as the first issue you look at to see where the appropriate law should be. So Georgia, on the other hand, says it's the place where you contract. So she goes up to Georgia. She's hired there. She's put to work there. But I think the problem is that if you look at the Nevada cases on conflicts and the ones on non-compete agreements, there's one coming out of Colorado, kind of the same thing here. It said Colorado. There was a transaction in Colorado. The headquarters was in Colorado. They said that's enough of a substantial relation. That's what the Nevada Supreme Court uses is the typical substantial relationship test. So I'm not sure how we got off on a different test where it's been specified. Unless, as the Supreme Court in Nevada said in the Ferdie Seavers case, unless the plan was to evade the law of the real situs. You mean there has to be an intention to evade the law of the real situs? Well, that's not what the case says. But if you look at the law of Georgia. What's the evidence that there's an intention to evade the law? If you look at the law of Georgia and you look at the law of Florida, you will see that Georgia would not enforce this contract. And since PSS developed this contract. I guess you assume that. I'm not sure that's necessarily true. The cases in Georgia state very strongly that if you don't have a clear definition of the location, the geographic location, that is ascertainable at the time the contract is signed, not at the end of the employee's employment. The geography has to be ascertainable at the time that the employee signs the contract. That's the Koger case. If not, the contract is void. So by switch by designating Florida, you're evading this fundamental policy of the State of Georgia and the Georgia case is subject to it. There's a difference between evading and avoiding. First of all, the contract was not unlimited either geographically or in time. It didn't say forever. No. And it didn't say anywhere in the world. There were limitations. So why would it be in violation of Georgia law? Because in Georgia law, again, the Koger case, Jarrett v. Hamilton, says if the contract says it will apply to any place the employee is subsequently assigned, it's void. That's what the Georgia cases say. So you have to assume that PSS, which is hiring people in Georgia, intended to make their contracts binding in Georgia. So therefore, they add this paragraph, which is only directed at Georgia and Louisiana. There are seven PSS contracts in the record. Only one of them, Judy DeBattistos, she was the only PSS employee employed that is hired in Georgia, and that's the only contract where you have that handwritten language, all counties included. Everywhere else, that's blank. If their argument is correct, that wouldn't have had to be filled in. That was filled in because PSS wanted to make that contract binding in Georgia because when she started work, she started working in the warehouse, delivering products to their customers. They wanted a contract. Their customer is in Georgia. They wanted a contract that if they had to sue her, not six years later, but a month later, if they had to sue her to stay away from their Georgia customers, they needed a contract that was enforceable. And under the Georgia case law, if that contract says this contract applies to any territory we may assign her in the future, it would be void, void on its face under the Koger case. Thank you, counsel. Thank you, Your Honor. Any other questions? This case is order submitted. We'll be in recess. Did she reserve some time? She didn't reserve any time. She didn't? By herself? No, I was just standing up because I thought I was going to run. You were correct. We'll be in recess until tomorrow morning. We're all going to stand up here shortly. Welcome to the session, ma'am, sir.
judges: Meskill, Trott, McKeown